IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DEWEY TERRY,

    Plaintiff,                    No. CIV S-10-0068 MCE GGH P

    vs.

JOHN HIVILAND, et al.,

    Defendants.              FINDINGS & RECOMMENDATIONS

_____/

I. Introduction

        Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C. § 1983.  Pending before the court is plaintiff's November 17, 2010, motion to compel (Doc. 29) and defendant's February 25, 2011, motion for summary judgment (Doc. 35).  Plaintiff filed an opposition to the motion for summary judgment and defendant filed a reply.  For the reasons that follow, the court recommends that the motion for summary judgment be granted and this case be closed.

II. Complaint

        This action continues on the second amended complaint filed on March 31, 2010. Doc. 12.  Plaintiff alleges that in March 2009, the sole defendant in this case, Norma Chavez, a correctional counselor, taped a picture up in the window of her office at CSP-Solano that was

1

racially offensive. The picture was an altered picture from the 2002 movie, *8 Mile*, that starred the white actor/rapper Eminem. In the original photograph, Eminem is sitting in the driver's seat of a car and the black actor Mekhi Pfifer is in the front passenger seat and there are two other actors sitting in the back seat. In the altered photo that Chavez taped to the window, which others could see, the picture is the same except former President George W. Bush's face has been superimposed on Eminem's face. Plaintiff alleges that President Barrack Obama's face was superimposed on Mekhi Pfifer's face.[1]

Plaintiff saw the photo and was offended. He complained and the photo was immediately taken down and destroyed. However, plaintiff alleges that this was nonetheless racial discrimination against him as he is black. Plaintiff further alleges that defendant Chavez retaliated against him when he filed a complaint against her.

III.  Motion for Summary Judgment

Legal Standard for Summary Judgment

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings,

---

[1] Defendant disputes that President Obama's face was in the picture, but concedes that former President Bush's face was in fact on the picture. This will be discussed in more detail below.

depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322, 106 S. Ct. at 2552. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323, 106 S. Ct. at 2553.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11, 106 S. Ct. at 1356 n. 11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary

1  judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a
2  genuine need for trial.'" Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (quoting Fed. R. Civ. P.
3  56(e) advisory committee's note on 1963 amendments).
4         In resolving the summary judgment motion, the court examines the pleadings,
5  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if
6  any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson,
7  477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the
8  court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587, 106 S. Ct.
9  at 1356. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's
10 obligation to produce a factual predicate from which the inference may be drawn. See Richards
11 v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902
12 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than
13 simply show that there is some metaphysical doubt as to the material facts . . . . Where the record
14 taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no
15 'genuine issue for trial.'" Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (citation omitted).
16        On June 15, 2010, the court advised plaintiff of the requirements for opposing a
17 motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154
18 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409, 411-12 (9th Cir.
19 1988).
20        In Thomas v. Ponder, 611 F.3d 1144 (9th Cir. 2010), the district courts were
21 cautioned to "construe liberally motion papers and pleadings filed by *pro se* inmates and ... avoid
22 applying summary judgment rules strictly." Id. at 1150. No example or further definition of
23 "liberal" construction or "too strict" application of rules was given in Ponder suggesting that any
24 jurist would know inherently when to dispense with the wording of rules. Since the application
25 of any rule which results in adverse consequences to the pro se inmate could always be construed
26 in hindsight as not liberal enough a construction, or too strict an application, it appears that only

4

the essentials of summary judgment, i.e., declarations or testimony under oath, and presentation of evidence not grossly at odds with rules of evidence, apply.

IV. <u>Undisputed Facts</u>

The following of defendant's undisputed facts (DUF) are either not disputed by plaintiff, or following the court's review of the evidence submitted, have been deemed undisputed:

At all relevant times plaintiff was a state prisoner in the custody of CDCR housed at CSP-Solano. DUF #2. At all relevant times defendant Chavez was a correctional officer at CSP-Solano. DUF #1. Plaintiff is black. DUF #3. On March 12, 2009, Chavez taped a picture up in the window of her office at CSP-Solano. DUF #4; Second Amended Complaint (SAC) at 6. The picture originated from the 2002 movie, *8 mile*, starring white actor/rapper Eminem. DUF #5. In the original picture[2] Eminem is sitting in the driver's seat of a car and black actor Mekhi Pfifer is in the front passenger seat. <u>Id</u>. Two other actors are sitting in the back seat. <u>Id</u>.

The photo that Chavez taped to the window was altered in that former President George W. Bush's face has been superimposed on Eminem's face. DUF #6. The photo was a poor quality black and white photocopy. DUF #7.

On March 15, 2009, plaintiff informed a Sergeant that a racially offensive picture had been posted in an office. DUF #11. The Sergeant immediately took down the picture and shredded it. <u>Id</u>.

At some point in March 2009, plaintiff filed a complaint against defendant Chavez. SAC at 34.[3] On April 1, 2009, Chavez spoke with plaintiff. DUF #28.

\\\\\

---

[2] A version of the original unaltered photo, that was not posted, can be seen in defendant's motion for summary judgment (MSJ), Exh. A to Chavez Decl.

[3] The complaint is dated March 8, 2009, but that date is clearly incorrect as it describes the March 12, 2009 incident.

1  V. Disputed Facts

2          Plaintiff alleges that the photo contained the faces of former President George W.
3  Bush and President Barack Obama superimposed over the faces of two of the actors.  Opposition
4  to summary judgment (Opposition) at 1.
5          Defendant disputes this and says, President Obama's face was not in the picture,
6  just former President Bush.  DUF #8.  While the actual picture in question was destroyed,
7  defendant states that the picture contained in the MSJ, Exh. B to Chavez Decl., is the same
8  picture though the one she posted was slightly larger, about 8 x 10 inches.  Chavez Decl. ¶ 5.
9          Chavez states that on April 1, 2009, she did not retaliate against plaintiff but
10 asked him why the photo bothered him.  DUF #28.  Plaintiff alleges that Chavez stated: "you
11 won't win this because I'm preparing a memo to the warden."  Opposition at 3.  Plaintiff then
12 states that Chavez tried to discourage and reprimand him for filing the complaint.  Id.

13 VI. Discrimination

14          Legal Standard

15          "The Equal Protection Clause of the Fourteenth Amendment commands that no
16 State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is
17 essentially a direction that all persons similarly situated should be treated alike."  City of
18 Cleburne v. Cleburne Living Center, 473 U.S. 432, 439, 105 S.Ct. 3249 (1985) (quoting Plyler v.
19 Doe, 457 U.S. 202, 216, 102 S.Ct. 2382 (1982)).  When challenging his treatment with regard to
20 other prisoners, a prisoner must show that his treatment is invidiously dissimilar to that received
21 by other inmates.  Johnson v. California, 543 U.S. 499, 511 125 S.Ct. 1141 (2005).

22          Analysis

23          Both parties cite numerous witnesses and declarations regarding if President
24 Obama was in fact in the photo or not, and then other declarations contradicting the other sides
25 statements.  For purposes of this motion, the undersigned will assume that the photo did contain
26 \\\\\

pictures of Presidents Obama and Bush superimposed on the faces of the actors.[4]

Assuming President Obama's face was superimposed onto the photo of Mekhi Pfifer that was placed in or about defendant's office for a few days and plaintiff or many prisoners saw the picture and were offended, this claim is entirely meritless and frivolous. [5] Plaintiff has failed to state even in the slightest, a viable claim under the Equal Protection Clause of the Fourteenth Amendment. Plaintiff does not even allege any discriminatory treatment, just that he did not like the picture. Nor does plaintiff allege any facts demonstrating that another racial group was treated differently. Plaintiff's claim fails to state a constitutional violation.

While plaintiff argues defendant violated CDCR policy, even if true, this does not state a federal claim. While defendant may, in hindsight, have made a poor choice for posting humorous pictures, this also does not in any way support a constitutional violation in the context of this case. Therefore, this claim should be denied as entirely frivolous.

VII.  Retaliation

Legal Standard

The Ninth Circuit treats the right to file a prison grievance as a constitutionally protected First Amendment right. Hines v. Gomez, 108 F.3d 265 (9th Cir. 1997); see also Hines v. Gomez, 853 F. Supp. 329 (N.D. Cal. 1994) (finding that the right to utilize a prison grievance procedure is a constitutionally protected right, cited with approval in Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995)); Graham v. Henderson, 89 F.3d 75 (2nd Cir. 1996) (retaliation for

---

[4] There is also debate if the actor in the back of the car in the photo is white or Hispanic, however this is entirely immaterial.

[5] Moreover, the "offense" in the picture, if offending at all, is not clearly directed to one race or the other. The undersigned supposes that whites could be offended as President Bush might be seen in the role of a mere chauffeur with President Obama in charge. Or, African-Americans might be offended in that President Obama was relegated to the back of the car. Most would have to work hard, however, to find meaningful offense in the altered picture at all. The alleged offense here is of the same "magnitude" as appears in the title of the Wesley Snipes/Woody Harrelson movie, *White Men Can't Jump*, which is to say, of no appreciable magnitude at all.

pursing a grievance violates the right to petition government for redress of grievances as guaranteed by the First and Fourteenth Amendments); Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989) (filing disciplinary actionable if done in retaliation for filing inmate grievances); Franco v. Kelly, 854 F.2d 584, 589 (2nd Cir. 1988) ("Intentional obstruction of a prisoner's right to seek redress of grievances is precisely the sort of oppression that section 1983 is intended to remedy" (alterations and citation omitted)); Cale v. Johnson, 861 F.2d 943 (6th Cir. 1988) (false disciplinary filed in retaliation for complaint about food actionable).

In order to state a retaliation claim, a plaintiff must plead facts which suggest that retaliation for the exercise of protected conduct was the "substantial" or "motivating" factor behind the defendant's conduct. See Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989). The plaintiff must also plead facts which suggest an absence of legitimate correctional goals for the conduct he contends was retaliatory. Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995). Verbal harassment alone is insufficient to state a claim. See Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987). However, even threats of bodily injury are insufficient to state a claim, because a mere naked threat is not the equivalent of doing the act itself. See Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987). Mere conclusions of hypothetical retaliation will not suffice, a prisoner must "allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights." Frazier v. Dubois, 922 F.2d 560, 562 (n. 1) (10th Cir. 1990).

Analysis

It is still not entirely clear how defendant retaliated against plaintiff for his filing of a complaint. Plaintiff repeatedly states that defendant attempted to discourage and reprimand him for filing the complaint, but does not provide any details on anything that occurred. Plaintiff has never stated what defendant actually did that was retaliation. Plaintiff does not define what reprimand means and trying to discourage plaintiff, even though he already filed the complaint, does not demonstrate retaliation.

Plaintiff also states that defendant said that plaintiff won't win this because defendant was preparing a memo to the warden. However, it is not known if defendant prepared a memo to the warden, or even what the memo said, and if this memo had any adverse impact on plaintiff. These bare and vague assertions will not overcome defendant's motion for summary judgment.

Plaintiff makes only one specific allegation of retaliation. Plaintiff states that several months after the picture incident there was an investigation regarding a threat against defendant by black inmates. Plaintiff alleges that defendant said that plaintiff could be involved so another prison staff member interviewed plaintiff. Plaintiff does not allege any consequences other than he was interviewed about the alleged threat. Even assuming all of these allegations are true, this does not demonstrate claim for retaliating. Plaintiff has included an affidavit from a witness who saw defendant "harass and intimidate" plaintiff, however no other information is provided and this affidavit is signed by plaintiff, not the witness. Opposition, Decl. of James Brown.[6]

Plaintiff has failed to show that he was in fact retaliated against for filing a complaint or any actions taken on behalf of prison staff was in retaliation for any protected conduct. Verbal harassment alone is insufficient to state a claim. See Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987). Moreover, plaintiff has failed to show that his questioning in an investigation regarding defendant was retaliatory and not for a legitimate correctional goal, despite the fact there were no adverse consequences. Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995).

Even assuming all of plaintiff's allegations are true, plaintiff has still failed to show any genuine issue as to any material fact actually does exist. Therefore, this claim should be dismissed.

---

[6] Defendant deposed James Brown, who denied ever seeing Chavez harass or intimidate plaintiff.

VIII     Motion to Compel

As the undersigned is recommending that the motion for summary judgment be granted and this case closed, the motion to compel should be denied as moot. The further discovery at issue could not change the result here.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Defendant's motion for summary judgment (Doc. 35) be granted and this case closed;

2. Plaintiff's motion to compel (Doc. 29) be denied as moot.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: 05/02/2011

/s/ Gregory G. Hollows

UNITED STATES MAGISTRATE JUDGE

GGH: AB
terr0068.sj